IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVERYTHING CYCLES, INC., an )
Oregon corporation, )
 )
           Plaintiff,   )   Civil No. 07-1434-HO
 )
     v.                 )   O R D E R
 )
YAMAHA MOTOR CORPORATION, U.S.A.,)
INC., a California corporation, )
 )
           Defendant.   )

Plaintiff, Everything Cycles, Inc., sought and received a temporary restraining order on October 18, 2007. On October 19, 2007, defendant, Yamaha Motor Corp., moved for reconsideration of that order and the court, upon reconsideration, affirmed the TRO.

Plaintiff operates a motorcycle dealership in Douglas County, Oregon and pursuant to a dealership agreement with defendant, sells defendant's motorcycles. Defendant has given plaintiff notice of intent to terminate the dealership agreement. Plaintiff filed this

suit in Douglas County Circuit Court (removed by defendant to this court) alleging violation of ORS §§ 650.140, 650.340 and 650.350. Plaintiff seeks a preliminary injunction on ORS § 650.140.

ORS § 650.140 provides, in part, that

> <u>Notwithstanding the terms of any franchise or other agreement</u>, it shall be unlawful for any manufacturer, distributor or importer to cancel, terminate or refuse to continue any franchise without showing good cause, provided the dealer <u>protests such termination by filing a complaint in court of competent jurisdiction within the time period specified in subsection (3)</u> of this section.

(emphasis added).

In determining good cause,

the court shall consider such factors as:

> (a) The amount of business transacted by the dealer as compared to the amount of business available to the dealer.
>
> (b) The investment necessarily made and obligations necessarily incurred by the franchisee in performance of the franchise.
>
> (c) The permanency of the investment.
>
> (d) The adequacy of the franchisee's new motor vehicle sales and service facilities, equipment and parts.
>
> (e) The qualifications of the management, sales and service personnel to provide the consumer with reasonably good service and care of new motor vehicles.
>
> (f) The failure of the franchisee to substantially comply in good faith with those requirements of the franchise that are reasonable.

ORS § 650.140(2).

2 - ORDER

Once a dealer files a timely protest:

> The "good cause" requirement is triggered when a dealer protests the termination of a franchise agreement by filing a complaint "in a court of competent jurisdiction." Or.Rev.Stat. § 650.140(1). Additionally, § 650.140(2) enumerates factors that "the court shall consider" when "determining if good cause exists," thus reflecting that it is the court's responsibility, not the franchisor's, to determine whether good cause exists to terminate a franchise agreement. This language would be rendered superfluous and the dealer's "protest" a nullity if the franchisor-rather than the court in which the protesting complaint was filed-was allowed to determine good cause. Read as a whole, I find that § 650.140 prohibits the termination of a franchise agreement when a franchisee has filed a complaint protesting the termination, unless the court in which the complaint was filed determines that good cause exists to terminate the agreement.

Cascade Motorsports of Oregon v. American Suzuki Motor Corp., 2004 WL 1839434 at *6 (D.Or. August 16, 2004, 2007).[1]

Consequently, plaintiff seeks to preliminarily enjoin defendant from canceling the dealership agreement until the court can determine whether good cause exist for so doing. Specifically, plaintiff seeks a declaration that:

---

[1] The Cascade Motorsports court found further support for this interpretation in ORS § 650.310: "Section 650.310 does not require a court to determine whether action by a franchisor is supported by good cause. Or.Rev.Stat. § 650.310 ('When determining whether good cause exists, a person shall consider....'). This comparison demonstrates that had the legislature intended to allow a motor vehicle franchisor to determine good cause, rather than the court, it would have done so." Id. at *6.

3 - ORDER

1. Defendant will not terminate Plaintiff's Dealership Agreement with Defendant and will continue to supply both parts and vehicles to Plaintiff; and

2. Defendant will not contact the Department of Motor Vehicles regarding Plaintiff or take any other action causing cancellation or revocation of Plaintiff's Vehicle Dealer Certificate.

Defendant has now had an opportunity to respond to the motion for a preliminary injunction.

STANDARDS

In seeking a preliminary injunction, plaintiff must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in their favor. The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly. Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991). For purposes of injunctive relief, serious questions refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo. Id. Serious questions are substantial, difficult and doubtful, as to make them a fair ground for

litigation and thus for more deliberative investigation. Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits. Id.

Even if the balance of hardships tips sharply in plaintiff's favor, however, it must be shown as an irreducible minimum that there is a fair chance of success on the merits. Stanley v. University of Southern California, 13 F.3d at 1313, 1319. (1994). Moreover, the public interest must be considered where the relief sought by the applicant might affect the public. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (where an injunction is requested which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff).

This case presents a situation in which the Oregon legislature has impliedly mandated issuance of a preliminary injunction to maintain the status quo between a franchisor and franchisee while a court determines whether good cause exists to terminate the franchise.

DISCUSSION

Defendant asserts that it is terminating the dealership agreement because plaintiff's sole shareholder and president, was convicted of theft, attempted theft, and possession of a stolen vehicle. In addition, defendant asserts that plaintiff has lost its business licence and was forced to leave the city of Roseburg, Oregon to relocate to Sutherlin, Oregon.

Plaintiff has a dealer certificate from the Oregon Department of Motor Vehicles (DMV) to operate out of Sutherlin after it noted a change of address with the DMV. It does, however, appear that plaintiff is in violation of the dealer agreement as the agreement recites that Roseburg, Oregon is the "dealer location," and plaintiff agreed not to change location without approval of defendant. Nonetheless, that does not negate the need for court determination of good cause to cancel a dealership agreement.

Randy Wing, plaintiff's sole shareholder and president, was convicted in Washington County Circuit Court of three misdemeanor counts of theft, attempted theft, and possession of a stolen vehicle.[2] The City of Roseburg revoked Wing's business license sometime around April of 2007 as a result of the convictions, but permitted him to continue operating his business until June 30,

---

[2]This appears to be related to purchasing what turned out to be stolen motorcycle parts online.

6 - ORDER

2007. Defendant informed plaintiff that it intended to terminate the dealer agreement if Wing lost his license.

Wing notified defendant in April of 2007, that he intended to move his dealership 14 miles away to Sutherlin, Oregon. Defendant sought more information about the new facility, etc., from plaintiff and found plaintiff's response to be inadequate.

Plaintiff closed the Roseburg dealership and moved to Sutherlin, but defendant never gave permission for the move. Defendant asserts there is no dealership agreement for Everything Cycles in Sutherlin. Defendant asserts it is entitled to terminate the agreement because plaintiff relocated without authorization, was not open for normal business hours (based on being closed in Roseburg), did not possess a proper business license (for Roseburg, Oregon), and failed to maintain business operations for seven consecutive business days and eight out of fifteen business days (also because the Roseburg business closed). It does not appear plaintiff was actually closed for seven consecutive business days or eight business days out of 15, but instead that he continued his business in a new location.

Defendant also asserts that plaintiff's dealer certificate is canceled, but plaintiff does have a current dealer certificate for operation in Sutherlin (as of June 12, 2007). Plaintiff is a "dealer" for purposes of ORS § 650.140. See Wing Declaration (#19) Exhibits B and C.

Plaintiff's certificate for Roseburg has been canceled. Accordingly, defendant asserts that plaintiff sent inaccurate information to the DMV asserting to be an authorized dealer of Yamaha because defendant did not authorize the Sutherlin location. However, as noted above, defendant cannot terminate the agreement until a court determines good cause.[3]

For purposes of ORS 650.140, "'Dealer' means any person who has been issued a vehicle dealer certificate under ORS § 822.020 and pursuant to a franchise from a manufacturer, distributor or importer, engages in buying, selling, leasing or exchanging new motor vehicles." ORS § 650.120(1). Plaintiff has a dealer certificate and has a franchise agreement. Although defendant is attempting to terminate the agreement, that is precisely what ORS § 650.140 addresses. The statues does not operate in such a way as to remove the protections under certain circumstances.[4]

---

[3]Moreover, the statute on dealership certificates does not appear to require a franchise agreement. See ORS § 822.020.

[4]Defendant argues that it had the right to terminate the agreement as a matter of law under ORS § 650.140(3)(d) which states:
> Notwithstanding the terms of any franchise or other agreement, a franchisor shall give a franchisee 60 days' written notice stating the specific reasons for cancellation, termination or noncontinuance of a franchise, provided that a franchisor need only give 30 days' written notice concerning the following reasons:
> ....
> Failure of the dealer to maintain its operation open for business for seven consecutive business days or for eight business days out of any 15-business-day period.

However, that portion of the statute merely identifies the time in
(continued...)

The issue of plaintiff's relocation is a bit of red herring as it may provide good cause under the factors enumerated under the state for terminating an agreement,[5] but it does not change the fact that the legislature determined that the court must determine whether good cause is shown before cancellation is permitted. One could argue that defendant is no longer operating pursuant to a franchise by failing to abide by the terms of the franchise agreement, but that does not mean the protection of showing good cause to the court is no longer required. Otherwise a franchisor could avoid court scrutiny simply by claiming breach rendering the statutory protection meaningless.

As noted in the statute, <u>notwithstanding the terms of any franchise or other agreement...</u> it is unlawful to terminate the franchise. Thus, plaintiff still has the franchise (albeit in apparent violation of the agreement) and it does have a dealer certificate from the DMV. Although defendant contends that plaintiff is using the statute to legitimize unauthorized relocation, the legislature has saw fit to protect the franchisee

---

[4](...continued)
which the franchisee must protest the termination by filing in court, it does not serve to void the protection of the statute. <u>See</u> ORS § 650.140(1) ("provided the dealer protests such termination by filing a complaint in court of competent jurisdiction within the <u>time period specified in subsection (3)</u>") (emphasis added).

[5]Such as the failure of the franchisee to substantially comply in good faith with those requirements of the franchise that are reasonable (here the agreement prohibited change in location without prior approval of defendant).

notwithstanding the agreement.  Moreover, defendant is not forced to continue its franchise agreement with plaintiff as a result of the statute, only to continue the status quo until a court can determine if good cause exists.  The legislature has demonstrated a public policy in favor of franchisees on this issues and defendant is bound by that policy.

Certainly defendant risks violating exclusive distributorships if a dealer moves to an area served by another exclusive franchise, but doing so under court order could relieve defendant of liability (or it could move for preliminary injunction of its own showing likelihood of success on good cause).  However, there is no such issue in this case.

Defendant lists a parade of horribles if it is not permitted to terminate at will, but as noted above, the legislature made a choice to protect franchisees.  Moreover, the statute does not negate altogether the ability to terminate a franchise, it just ensures that an independent court makes the determination.  As noted above, the court may very well find good cause based on plaintiff's relocation, but the court needs additional evidence such as prior performance under the agreement (has plaintiff relocated before without problem), has defendant looked the other way when other dealers (who don't have a president with a conviction) moved short distances, etc.

At this stage of the proceedings the issue is whether plaintiff will succeed on the merits of showing it properly invoked the protection of ORS § 650.140 to seek a court determination of good cause. The legislature determined that the agreement remains in placed until the court makes that determination and thus, plaintiff has shown a strong likelihood of success on the merits of that narrow issue. In addition, while plaintiff presumably could seek damages if defendant is found to have wrongfully terminated the agreement, it is hard to compute the damage to reputation and lost customer base when a dealer loses a franchise. The damage to good will may not be repairable should a court later determine that good cause does not exist to terminate the franchise and putting a dollar figure on that damage is speculative at best. In addition, plaintiff's good will could be harmed if it is unable to provide warranty service to previous customers. Moreover, the legislature has made the decision, as a matter of law, that the status quo is to be maintained while determining the issue of good cause. Thus plaintiff has made a showing of irreparable harm and that public policy favors an injunction maintaining the status quo.

The risk to defendant is slight in that the vehicles plaintiff orders are paid for by G.E. Finance, plaintiff's floor financing company. There was an issue as to whether plaintiff's account is current, but the evidence produced for the hearing and subsequently indicates that it is and that a credit hold has been removed. It

11 - ORDER

could be argued, however, that defendant risks harm to its reputation by retaining a "rogue" franchise, but defendant makes no such argument and the legislature has decided the balance of harms tips in favor of a franchisee on such issues.

Under Fed. R. Civ. P. 65(c) the court is required to require security in an amount deemed proper if it turns out defendant has been wrongfully enjoined. Under the statute, the injunction (maintaining the status quo) is required. Moreover, G.E. Finance has a financing agreement in place with plaintiff to pay defendant for products ordered by plaintiff.

Defendant notes that plaintiff has placed a significant order for several hundred thousands dollars of Yamaha products as evidence of harm it will suffer if the injunction is wrongful. Defendant also provides evidence that a credit hold was placed on plaintiff's account with G.E. when a flooring check revealed one vehicle sold out of trust. However, that same evidence establishes that the required payment has now been made to G.E. by plaintiff and that the credit hold will likely be removed following a subsequent flooring check. On October 24, 2007, a flooring check conducted by G.E. Finance revealed that Everything Cycles is current. G.E. Finance has released the credit hold.

Defendant does not argue damage to its reputation, breach of exclusive franchise agreements with others, or other types damages

resulting from the injunction.  Given the financing arrangement with G.E., the court finds that a no bond is required.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a preliminary injunction (#6) is granted.  Defendant will not terminate plaintiff's dealership agreement with plaintiff and will continue to supply parts and vehicles to plaintiff.  In addition, defendant will not contact the Oregon Department of Motor Vehicles to inform it that plaintiff does not have a valid franchise agreement with defendant.

DATED this __25th__ day of October, 2007.

                                        ___s/ Michael R. Hogan___
                                        United States District Judge