IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVERYTHING CYCLES, INC., an      )
Oregon corporation,              )
                                 )
                    Plaintiff,   )        Civil No. 07-1434-HO
                                 )
          v.                     )        O R D E R
                                 )
YAMAHA MOTOR CORPORATION, U.S.A.,)
INC., a California corporation,  )
                                 )
                    Defendant.   )
_____ )

     Plaintiff Everything Cycles, Inc. operates a motorcycle

dealership in Douglas County, Oregon and pursuant to a dealership

agreement with defendant Yamaha Motor Corp., sells defendant's

motorcycles.  Defendant has given plaintiff notice of intent to

terminate the dealership agreement.  Plaintiff filed this suit in

Douglas County Circuit Court (removed by defendant to this court)

alleging violation of ORS §§ 650.140, 650.340 and 650.350.

Plaintiff sought and received a temporary restraining order (TRO) on October 18, 2007.  On October 19, 2007, defendant moved for reconsideration of that order and the court, upon reconsideration, affirmed the TRO.  On October 25, 2007, the court granted plaintiff's motion for a preliminary injunction prohibiting defendant from terminating the dealership agreement and requiring defendant to supply plaintiff.

Plaintiff seeks partial summary judgment on the issue of liability contending that defendant violated ORS § 650.140 as a matter of law by terminating plaintiff before this court determined whether good cause existed for the termination.  Defendant seeks partial summary judgment contending that it properly terminated plaintiff's authority to sell Yamaha brand ATVs, off-road motorcycles, and side-by-side vehicles.


A.   Defendant's Motion for Partial Summary Judgment (#58)

In September of 1990, defendant entered into a dealer agreement making plaintiff an authorized dealer of Yamaha products in Roseburg, Oregon.  Randy Wing, president of Everything Cycles, Inc. signed on behalf of plaintiff.  On August 6, 2007, defendant notified plaintiff that it was terminating the dealer agreement because plaintiff closed its Roseburg location, was not open during normal business hours, had relocated without complying with the dealer agreement, did not possess a proper business license, and

had failed to maintain operations for seven consecutive business days and eight out of 15 business days.[1]  Plaintiff then filed this action.  Defendant stopped supplying product and parts to plaintiff until the court issued the TRO.  Defendant has counterclaimed alleging it has good cause to terminate the agreement.

In its motion, defendant contends that the Oregon motor vehicle dealership law does not apply to the ATVs, off-road motorcycles, or side-by-side vehicles portion of the dealer agreement.  Plaintiff alleges violation of ORS § 640.140(1) which applies to termination of dealer agreements of "motor vehicles." ORS 650.120(12) defines motor vehicle as:

> (a) A self-propelled device, other than a motor home, used:
>
>> (A) For transportation of persons or property upon a public highway; or
>>
>> (B) In construction; or
>
> (b) A trailer with a gross vehicle weight rating of 20,000 pounds or more that is used for commercial transportation on a public highway.

---

[1]Until July 2007, Wing operated Everything cycles in Roseburg, Oregon.  In 2005, Wing was convicted of two counts of theft, one count of attempted theft, and one count of possession of a stolen vehicle. The convictions arose from Wing's purchase of a stolen Suzuki motorcycle on eBay.  His convictions were affirmed after appeal to the Oregon Court of Appeals, and the Oregon Supreme Court denied review. The City of Roseburg revoked Everything Cycles's business license because the crimes of conviction were related to Wing's business dealings.  The revocation was sustained on appeal.  Wing was permitted an extension of the revocation enforcement period in order to relocate his business outside of the city's boundaries.  Everything Cycles then relocated to Sutherlin, Oregon.

Defendant contends that the ATVs, off-road motorcycles and side-by-sides may not be used on public highways in Oregon and that they are not used in construction.

Plaintiff contends that there are issues of fact as to whether ATVs, off-road motorcycles and side-by-sides are used in construction and on public highways. Moreover, plaintiff maintains that the dealership agreement is a single agreement granting plaintiff the right to market Yamaha vehicles generally and that defendant cannot terminate specific product lines within that agreement without complying with the statute.

Wing generally offers his own opinion that the products at issue are used in construction. Defendant objects that Wing is not qualified to make such a statement. However, Wing's declaration establishes that he sells such products to construction companies who use them in construction to move personnel and materials around construction sites. Wing is able to make such statements based on personal observations or experience. There is sufficient evidence to create issues of fact as to construction use, but whether such use is the use contemplated by the statute is another matter which will be discussed below.

Plaintiff also argues that the subject products can be used on public highways. ORS § 821.190 prohibits ATVs (which includes off-road motorcycles and side-by sides (ORS §§ 801.190, 193, 194)) on public highways. However, ORS § 821.200 provides some limited

4 - ORDER

exceptions.  Again, defendant contends that such use is not within the meaning of "motor vehicle" for purposes of the statute at issue.

When interpreting an Oregon statute, the court's goal is to give effect to the legislative intent.  PGE v. Bureau of Labor and Industries, 859 P.2d 1143 (Or. 1993).  If the terms of the statute are ambiguous, the court looks to the text of the statute within the context of the code in order to determine whether the ambiguity is resolved.  If not, the court turns to the legislative record in order to discern the legislative intent.  Id.

The language of ORS § 650.120(12) could be read to include a broad range of self-propelled vehicles that could be used in construction or for transportation on a public highway under even limited circumstances.  But the fact that other parts of Oregon law separately define ATVs and generally exclude them from public highways indicates that the legislative intent may not be so broad. Thus, there is ambiguity in the statute itself.

Defendant's argument that the provision "upon a public highway" would be rendered meaningless if plaintiff's interpretation is accepted is compelling.  See Bolt v. Influence, Inc., 333 Or. 572, 581 (2002) (courts assume that the legislature did not intend any portion of its enactments to be meaningless surplusage).  The use of the phrase would be meaningless if the

5 - ORDER

limited exceptions for off-road vehicles to be operated on a public highway rendered them devices used "upon a public highway."

The same can be said of devices used in construction as virtually any self-propelled device could be used in relation to construction. Defendant maintains that the legislature intended construction equipment in drafting ORS § 650.120(12)(B). The Staff Measure Summary for the statute (HB 3459) of the 73rd Oregon legislative regular session (2005) indicated that by adding vehicles used in construction, the bill includes dealers and manufactures of construction equipment. Under plaintiff's interpretation, the phrase used "in construction" would cover many other vehicles already included in the definition such as street legal cars and trucks.

A proper reading of the statute indicates that it was not meant to include off-road recreational ATVs even though such may be used on public roads under limited circumstances or may be used in transporting equipment and people at a construction site.

Plaintiff's next argument is that there is one overarching franchise agreement. Therefore, plaintiff contends, defendant can not sidestep ORS § 650.140 by terminating the agreement as to certain product lines that do not fall under the definition of "motor vehicle" while continuing to deliver those products that do.

ORS § 650.140(1) provides that it shall be unlawful for any manufacturer to terminate any franchise without showing good cause,

6 - ORDER

provided the dealer protests such termination.  A "franchise" means

a contract under which

> (a) The franchisee is granted the right to sell, lease
> and exchange new motor vehicles manufactured, distributed
> or imported by the franchisor;
>
> (b) The franchise is an independent business operating as
> a component of a distribution or marketing system
> prescribed in substantial part by the franchisor;
>
> (c) The franchisee's business is substantially associated
> with the trademark, trade name, commercial symbol or
> advertisements designating the franchisor or the products
> distributed by the franchisor;
>
> (d) The franchisee's business is substantially reliant on
> the franchisor for a continued supply of motor vehicles,
> parts and accessories;
>
> (e) The franchisee is granted the right to perform
> warranty repairs authorized by the franchisor; and
>
> (f) The franchisee is granted the right to sell, install
> and exchange parts, equipment and accessories
> manufactured, distributed or imported by the franchisor
> for use in or on motor vehicles.

ORS § 650.120.

Plaintiff argues that defendant's termination of specific

vehicle types within the overall dealer agreement violates

plaintiff's contractual rights under ORS § 650.140.

Defendant argues that each product line sold by plaintiff

constitutes a separate franchise because each Yamaha product line

sold by plaintiff required a separate execution of a product

addendum.  Moreover, even if there were only one agreement,

discontinuation of certain products, according to defendant, is not

a termination of the franchise.

7 - ORDER

Defendant's argument is somewhat supported by General Motors
Corp. v. Gallo GMC Truck Sales, Inc., 711 F.Supp. 810, 814-15
(D.N.J. 1989) where the court held that three addendums to a dealer
agreement constituted three franchises. However, the GMC court
specifically noted that the dealer agreement required a
co-existence of both a dealer agreement and a valid motor vehicle
addendum and that the language of the dealer agreement provided
that a dealer has a non-exclusive right to buy those GMC trucks
identified in the addendum (addendum in the singular). Thus,
because there were three addenda, the court determined there must
be separate franchises. However, in this case, the dealer
agreement refers to products, parts and accessories specifically
defined on the "Addendum(s)." Thus, plaintiff is correct that all
products are sold under one franchise. Nonetheless, this supports
defendant's alternative argument that discontinuing one product
line is not termination of the franchise. Cf. id. (GMC argument
that there has always been but one franchise agreement, embodied in
the dealer agreement, and that it was unaffected by the
cancellation of the heavy duty truck addendum is belied by the fact
that each addendum is a separate franchise). Therefore,
discontinuation of the non "motor vehicle" product lines does not
technically constitute a violation of ORS § 650.140. Nonetheless,
such a construction of the agreement would also allow defendant to
discontinue product lines that include "motor vehicles" so long as

8 - ORDER

one addendum to the agreement is still satisfied.  This, in effect,
violates the spirit of the dealer agreement and the protections
afforded by Oregon's franchise termination statute.  The court
declines to construe the agreement in such a manner at this stage
of the proceedings and will defer to the determination of good
cause in later proceedings.  Accordingly, defendant's motion for
summary judgment is denied.[2]


B.   Plaintiff's Motion for Summary Judgment (#50)

     As implicated by the discussion above and the entry of the
preliminary injunction, Oregon has made a policy decision to
protect dealers over large manufacturers pending a good cause
determination.  While in some cases such a policy may result in
forcing the manufacturer to continue a business relationship with
arguably a rogue dealer, the policy choice is one for the
legislature and not the court.  Thus, to the extent defendant
terminated the franchise prior to a determination by the court of
good cause (for the brief period between 30 days after notice of

---

[2]This is not to say that Yamaha could not discontinue a product
line and thus stop providing products covered by an addendum with
respect to such a product line to all dealers.  See Central GMC, Inc.
v. General Motors, Corp., 946 F.2d 327, 330-31 (4th Cir. 1991) (GM's
withdrawal from the market for heavy duty trucks did not violate
franchise law in Maryland because it still provided light and medium
duty tracks under the singular franchise agreement containing
addendums for all three types of trucks).  However, this is not what
defendant is doing here.  Rather defendant seeks to discontinue a
product line with respect to a single dealer for "good cause."

termination and the issuance of the TRO), there is a technical violation of ORS 650.140.   While it may very well be that ultimately the court will find that good cause to terminate the franchise exists, there is a violation.   While there may be issues of fact as to whether plaintiff violated the agreement by changing locations and losing a business licence, such issues do not appear to create an issue such that defendant can treat plaintiff as having unilaterally terminated the agreement allowing defendant to sidestep a good cause determination.

Plaintiff seeks partial summary judgment on the issue of liability for the approximately 45 days that the franchise was terminated prior to the court issuing the TRO.  Defendant maintains that there are unresolved issues of fact regarding whether plaintiff terminated the franchise by closing its location in Roseburg.  Defendant argues summary judgment is not appropriate because defendant stopped shipments because plaintiff was selling product from an unauthorized location, and because it only stopped shipments of off-road vehicles.

As noted above, the issue of off-road vehicles does not preclude a violation of ORS § 650.140 because there was only one franchise agreement.

Defendant contends that it stopped shipments because plaintiff accepted shipments of product in its authorized location in Roseburg and transported the units to Sutherlin to sell from an

10 - ORDER

unauthorized location.   Under the dealer agreement plaintiff was required to get prior approval before selling at another location. Defendant argues that the legislature could not have intended to force a manufacturer to continue the franchise in such circumstances because a dealer could then relocate to another exclusive location and force the manufacture to violate a dealership agreement with another dealer during the period that good cause is determined.   Defendant maintains that it has a routine practice of continuing to supply dealers after notice of termination until the protest of termination has been resolved and that it would have continued such practice had plaintiff not moved its location.  However, issues as to whether plaintiff unilaterally terminated the dealership agreement are ones for the court to consider in its good cause determination and the statute still protects plaintiff under the circumstances.

The agreement provides that in order to maintain its network of dealers, the dealer agrees not to directly or indirectly sell products from another location, but that a change of location can be authorized and will not be unreasonably withheld.  This brings the statute into play in this matter.  The agreement also notes that it is nonexclusive and thus the defendant probably would not be put in danger of violating other dealer agreements because of a change in location.  Given that the agreement does contemplate relocation, such a breach of the agreement by plaintiff is just

11 - ORDER

another consideration for the court to make in reaching the good cause determination.[3]   The legislature made the policy choice to err on the side of the dealer in these cases.   Accordingly, plaintiff's motion for summary judgment as to liability only is granted.   The court makes no findings as to how any possible damages would be computed for such a technical violation or whether a later determination of good cause for termination of the franchise impacts such damages.

<u>CONCLUSION</u>

For the reasons stated above, defendant's motion for partial summary judgment (#58) is denied and plaintiff's motion for partial summary judgment (#50) is granted.

DATED this   22<u>nd</u>   day of May, 2008.

<u>    s/ Michael R. Hogan    </u>
United States District Judge

---

[3]One of the factors to consider in ORS § 650.140 is the failure of the franchisee to substantially comply in good faith with those requirements of the franchise that are reasonable.

12 - ORDER