IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVERYTHING CYCLES, INC., an       )
Oregon corporation,               )
                                  )
                Plaintiff,        )        Civil No. 07-1434-HO
                                  )
        v.                        )        O R D E R
                                  )
YAMAHA MOTOR CORPORATION, U.S.A.,)
INC., a California corporation,   )
                                  )
                Defendant.        )
_____ )

        Plaintiff filed this suit in Douglas County Circuit Court
(removed by defendant to this court) alleging violation of ORS §§
650.140, 650.340 and 650.350. Plaintiff, Everything Cycles, Inc.
(ECI), sought and received a temporary restraining order (TRO) on
October 18, 2007.  On October 19, 2007, defendant, Yamaha Motor
Corp., moved for reconsideration of that order and the court, upon
reconsideration, affirmed the TRO.  On October 25, 2007, the court
granted plaintiff's motion for a preliminary injunction prohibiting

defendant from terminating the dealership agreement and requiring defendant to supply plaintiff.

On May 22, 2005, the court denied defendant's motion for partial summary judgment (based on its argument that the Oregon Motor Vehicle Dealership law did not apply to much of the vehicles sold by plaintiff). Also on May 22, 2005, the court granted plaintiff's motion for partial summary judgment on the issue of liability for the approximately 45 days that the franchise was terminated prior to the court issuing the TRO. However, the court also noted that it appeared likely that defendant ultimately would prevail in demonstrating that defendant had good cause to terminate the franchise.

Defendant now contends that there was good cause to terminate the franchise, as a matter of law, due to plaintiff's president's conviction for theft.


A.   Undisputed Facts

The undisputed facts demonstrate the following:

In September of 1990, defendant entered into a dealer agreement with plaintiff making plaintiff an authorized dealer of Yamaha products in Roseburg, Oregon. Randy Wing, president of Everything Cycles, Inc. signed on behalf of plaintiff. Until July 2007, Wing operated Everything cycles in Roseburg, Oregon. In late 2004 or early 2005, Wing was convicted of two counts of theft, one

2 - ORDER

count of attempted theft, and one count of possession of a stolen
vehicle.  The convictions arose from Wing's purchase of a stolen
Suzuki motorcycle on eBay.  His convictions were affirmed after
appeal to the Oregon Court of Appeals, and the Oregon Supreme Court
denied review.  The City of Roseburg revoked Everything Cycles's
business license because the crimes of conviction were related to
Wing's business dealings.  The revocation was sustained on appeal.
Wing was permitted an extension of the revocation enforcement
period, until July 1, 2007, in order to relocate his business
outside of the city's boundaries.  Everything Cycles then relocated
to Sutherlin, Oregon.

On January 29, 2007, defendant informed defendant that it

learned that [Wing was] convicted under certain criminal
statutes and that the convictions had been upheld.

Section 6 of your Dealer Agreement addresses termination
by Yamaha.  Pursuant to Section 6(d), Yamaha may
terminate your Dealer Agreement for, "[a]ny act by the
Dealer or any person involved in the ownership or
operating management of Dealer which violates any law and
affects adversely Dealer's operations or any conduct or
unfair business practice by Dealer or any person involved
in the ownership or operating management of Dealer which
affects adversely Dealer's operation or the good-will and
reputation of Dealer, Yamaha, or the Products."

Due to the affirmation of your conviction we are
considering the initiation of termination of our Dealer
Agreement with you.  Please provide us with any comments
that you would like us to consider prior to making a
determination on termination within fifteen (15) days of
the date of receipt of this letter....

Furthermore, under Section 6(g), Yamaha may terminate
your Dealer Agreement upon the "[r]evocation ... [of] any
license or permit necessary to conduct [Dealer's]

3 - ORDER

operations hereunder."   According to our information,
there is a strong likelihood that you will soon lose your
license to do business issued by the City of Roseburg,
Oregon.

While Yamaha is not terminating your Dealer Agreement at
this time per our discussion above, we will move to
terminate your Dealer Agreement immediately if you lose
your business license.

Exhibit 1, p.1 to the declaration of Steven G. Liday (#126).

Wing responded that his conviction had not adversely affected
his dealership operation or good-will and that he believed the
Oregon Supreme Court would overturn the conviction.  Exhibit 2 to
the declaration of Steven G. Liday (#126).  On April 23, 2007,
Defendant responded to the letter by noting that it had learned
that the convictions had become final and that the City of Roseburg
would terminate plaintiff's license effective April 30, 2007.  At
that time, defendant further notes that it was called regarding a
move to Sutherlin and was concerned that the move was prompted
primarily by the impending loss of the business license.  Defendant
noted it needed a dealer to serve Roseburg and was not inclined to
approve the relocation.  Exhibit 3 to affidavit of Steven G. Liday
(#126).

As noted, ECI continued to operate out of Roseburg until July
of 2007 and then relocated to Sutherlin without approval from
defendant.  On August 6, 2007, Yamaha noted that plaintiff did not
possess the proper license to conduct business at plaintiff's
authorized location and informed plaintiff that it was terminating

4 - ORDER

the dealer agreement.   Exhibit 1 to Declaration of Randy Wing
(#102).


B.   Discussion

     While plaintiff goes to great lengths to distance the City of
Roseburg's license revocation and dealer agreement termination from
the conviction, the record demonstrates an inescapable link.  While
the City of Roseburg did agree to extend the date for revocation so
that plaintiff could relocate out of the Roseburg city limits, it
nonetheless revoked the license effective no later than July 1,
2007.  See Exhibit 10 to Declaration of Steven G. Liday (#93) at ¶
3.  The City based its revocation on the conviction.  See Exhibit
6 to declaration of Steven G. Liday (#93).  And while it is true
that the actual letter of termination from defendant did not then
reference the conviction, the process started because of the
conviction as demonstrated by Defendant's January 29, 2007 letter.

     In a similar case involving the same plaintiff, a court ruled
that the conviction and relocation supports good cause to terminate
a dealership agreement under a similar agreement with American
Honda Motor Co.[1]  The statute at issue provides

          Notwithstanding the terms of any franchise or other
          agreement, it shall be unlawful for any manufacturer,

_____

     [1]At oral argument, plaintiff noted that the agreement with Honda
did not require an adverse affect of the dealer's operations.
However, the loss of business licence, in this case, did adversely
affect the dealer's operations.

5 - ORDER

distributor or importer to cancel, terminate or refuse to
continue any franchise without showing good cause,
provided the dealer protests such termination by filing
a complaint in court of competent jurisdiction within the
time period specified in subsection (3) of this section.

In determining good cause,

the court shall consider such factors as:

> (a) The amount of business transacted by the
> dealer as compared to the amount of business
> available to the dealer.

> (b) The investment necessarily made and
> obligations necessarily incurred by the
> franchisee in performance of the franchise.

> (c) The permanency of the investment.

> (d) The adequacy of the franchisee's new motor
> vehicle sales and service facilities,
> equipment and parts.

> (e) The qualifications of the management,
> sales and service personnel to provide the
> consumer with reasonably good service and care
> of new motor vehicles.

> (f) The failure of the franchisee to
> substantially comply in good faith with those
> requirements of the franchise that are
> reasonable.

ORS § 650.140(2).

Plaintiff stretches the record in an attempt to demonstrate

that defendant engaged in abusive practices that the statute is

designed to deter. However, there is no reasonable evidence to

suggest that defendant sought to terminate the agreement for any

reason other than reasons allowed under the statute, i.e., the

failure of the franchisee to comply in good faith with the

6 - ORDER

reasonable requirements of the franchise.  While there is evidence to suggest that plaintiff's sales and service record were good, that another relocation had been previously approved, and that plaintiff engaged in a substantial amount of business for defendant's product, these factors do not serve to demonstrate a lack of good cause.  Moreover, the court agrees with Judge Thomas Coffin that the factors listed in the statute need not be accorded equal wight for the reasons stated in his opinion, <u>Everything Cycles, Inc. v. American Honda Motor Co.</u>, Case No. 07-1170-TC (Opinion and Order dated April 25, 2008 at pp. 6-14).

The court finds that Wing's conviction and plaintiff's subsequent loss of business licence in Roseburg and  unapproved relocation constitute good cause for termination even under the circumstances of this case as a matter of law.[2]

Judge Coffin's findings are persuasive:

I turn now to a consideration of the statutory factors, beginning with (2)(f), which weighs very heavily in AHM's

---

[2]Plaintiff's assertions regarding unreasonable withholding of approval of relocation are of no merit as plaintiff fails to cite any instance in which a relocation was approved under similar circumstances involving conviction for dishonesty related to the business.  Plaintiff does produce evidence of a Salem dealer losing its DMV license for three days without termination of the franchise by defendant, but that situation does not rise to the level of plaintiff's situation.  Further, the court finds no evidence to support plaintiff's bold assertion that "Yamaha's deliberate delays forced [plaintiff] to relocate to Sutherlin without approval."  The record demonstrates that the relocation was initiated by the impending loss of plaintiff's business license.  The record further demonstrates that defendant initiated termination of the dealership agreement because of the conviction.

favor. Under that subsection, the court considers "[t]he
failure of the franchisee to substantially comply in good
faith with those requirements of the franchise which are
reasonable."    There is no dispute of fact concerning
whether Wing was convicted of felonies related to his
business; [footnote omitted] he purchased a stolen
motorcycle, understood that serial numbers had been
intentionally removed, involved an employee in its
disassembly, and implicated ECI in the transaction by
testifying at the criminal proceeding that his store
purchased the items. Further, the record indicates that
Wing and ECI failed to comply with critical components of
the mutually agreed-upon Sales and Service contracts,
which required Wing to refrain from criminal activity
that might affect AHM's reputation, maintain a business
license, and acquire permission before relocating the
dealership. Wing's actions demonstrate absolute disregard
for AHM's licensing and relocation requirements.  His
convictions bespeak bad faith in dealings with potential
customers, employees, the police, and those dealings
endanger the reputation of his supplier, AHM.

Concerning subsection (2)(e), "[t]he qualifications of
management, sales and service personnel to provide the
customer with reasonably good service and care of new
motor vehicles," I note that Wing's own conviction and
license revocation cut heavily against his qualifications
to serve as an AHM franchisee.

Although the remaining factors do not weigh as much
against plaintiff, neither do they rescue his case.
[footnote omitted]    Under subsection (2)(a), I am to
consider "[t]he amount of business transacted by the
dealer as compared to the amount of business available to
the dealer."  Here, I note that although ECI's ranking
remained high for a period even after Wing's conviction,
its performance decreased in recent months and has
plummeted in Honda's national rankings, due in part to a
general market downturn.  Concerning subsections (2)(b)
and (2)(c), "[t]he investment necessarily made and
obligations necessarily incurred by the franchisee in the
performance of the franchise," and the "permanency of the
investment," plaintiff asserts that he has spent over one
million dollars on the Sutherlin dealership.  As  AHM
explains, this statement does not segregate plaintiff's
investments for other ongoing franchises in the Sutherlin
location.    Even assuming (giving the plaintiff the
benefit of favorable factual inferences) that significant

8 - ORDER

funds supported the Honda franchise in Sutherlin, the investment was ill-advised because the relocation was unauthorized.

Concerning subsection (2)(d), "[t]he adequacy of the franchisee's new motor vehicles sales and service facilities, equipment and parts," plaintiff contends that the Sutherlin facility is more than adequate because it is more spacious than his Roseburg location. For purposes of addressing defendant's summary judgment motion, the court accepts this representation as true. Nonetheless, as explained previously, the factors are not entitled to equal weight in the analysis.

Measured along with the remaining factors, Wing's convictions, which involve crimes of dishonesty involving his business, and his failure to comply with the agreed-upon and reasonable terms of the franchise agreement, justify termination. The court will not force AHM to continue its business relationship with Wing, whose convictions adversely affect AHM's reputation and violate the Sales and Service Agreements. Further, requiring the business relationship to continue after Wing's decisions to continue his Honda sales and repair after revocation of his license and the unauthorized relocation would eviscerate material provisions of the contracts to which Wing agreed and put this court in the business of regulating franchise relationships without respect to reasonable business expectations. Such an action would clearly exceed the legislative intent underlying Or. Rev. Stat. § 650.140, which was to protect franchisees from coercive and abusive trade practices. In sum, "good cause" exists for the termination of the Sales and Service agreements under Or. Rev. Stat. § 650.140(2).

Opinion and Order at pp. 14-17.

As noted above, even though the amount of business transacted for defendant's product at plaintiff's unauthorized dealership remains high and that Wing is not responsible for the day-to-day operations, such is not enough for the court to force defendant to continue dealing with one who's reputation for dishonesty has been

demonstrated through convictions for theft. Accordingly, the motion for summary judgment is granted.[3]

<u>CONCLUSION</u>

For the reasons stated above, defendant's motion for summary judgment (#90) is granted.

DATED this ___8<u>th</u>___ day of August, 2008.

                                    ___s/ Michael R. Hogan____
                                    United States District Judge

---

[3]The evidence regarding the proposed sale of the dealership does not moot the case or the motion for summary judgment as asserted by plaintiff.

10 - ORDER